THE HEATH LAW FIRM, PLLC
INNOVATIVE CRIMINAL DEFENSE

Mark Heath
1640 South Stapley Drive, Suite 127
Mesa, Arizona 85204
State Bar No. 025529
(480) 999-5776 (fax)
mark@theheathlawfirm.com
(480) 442-0489

Attorney for Defendant

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| United States of America,<br>Plaintiff,<br>vs.<br>Brandon Adams,<br>Defendant. | No. 2:14-cr-00184-NVW-2<br>**DEFENDANT'S OBJECTIONS TO THE DRAFT PRESENTENCE REPORT** |

Brandon Adams, through counsel, submits the following objections to the draft presentence report:

**Objection 1: Page 5, paragraph 6 and Page 7, paragraphs 13 and 14.**

Brandon objects to the characterization of his relationship with Gordon Hall as a partnership. Brandon had no ownership interest in Gordon Hall's company. Brandon had no control in the company either. Gordon Hall hired Brandon as an employee to assist his company through consulting as a contract "expert."

Second, Brandon is not actually "familiar with contract law." Brandon was a self-proclaimed "expert" in contracts but had no formal training and is not a lawyer. Brandon's theories on contracts are not conventional. Recognizing this, Gordon recruited Brandon so he could use his theories for his own purposes.

**Objection 2: Page 6, paragraph 9 and Pages 7-8, paragraph 21**

Brandon objects that he created 149 orders totaling $93,725,659.03. There are issues with respect to both relevant conduct and intended loss calculations. There was no intent to defraud because: 1) Brandon believed the money orders would legally offset debts and 2) Brandon trusted the information provided to him from Gordon Hall.

**A. Relevant conduct.**

First, Brandon mistakenly believed that Article 3 of the Uniform Commercial Code authorized the Secretary of Treasury to offset tax liabilities with those money orders. The United States Sentencing Guidelines provide:

> Because a count may be worded broadly and include the conduct of many participants over a period of time, the scope of the criminal activity jointly undertaken by the defendant (the "jointly undertaken criminal activity") is not necessarily the same as the scope of the entire conspiracy, and hence relevant conduct is not necessarily the same for every participant. In order to determine the defendant's accountability for the conduct of others under subsection (a)(1)(B), the court must first determine the scope of the criminal activity the particular defendant agreed to jointly undertake (i.e., the scope of the specific conduct and objectives embraced by the defendant's agreement).

USSG §1B1.3, comment (n.2). Because there was no intent to defraud, Brandon could not "jointly under[take] criminal activity" with respect to the uncharged and untried counts. *See* USSG §1B1.3(1)(B). Brandon believed his actions were legal. Long before Gordon Hall concocted a business plan, Brandon taught his theory of contracts. Gordon Hall determined he would use Brandon's ideas for his business venture to write of tax debts. Brandon shared no profits in the venture beyond his employee wages. Therefore, the scope of Brandon's activity is limited to the counts he pleaded guilty to.

**B. Intended loss.**

Second, Brandon relied on the accuracy of the information provided to him by Gordon Hall's company to create money orders. And so Brandon did not intend financial loss for the amounts alleged.

Intended loss is defined as "pecuniary harm that was intended to result from the offense" and may include loss that "would have been impossible or unlikely to occur." *See* USSG §2B1.1, comment. (n.3(A)(ii)). But intended loss is not simply potential loss. In *United States v. Santos*, the Ninth Circuit adopted the approach of the Third and Eleventh Circuit in *Geevers. See* 527 F.3d 1003, 1008 (9th Cir. 2008) *United States v. Geevers* states that the "court errs when it simply equates potential loss with intended loss without deeper analysis." 226 F.3d 186, 192 (3d Cir. 2000). Instead, the calculation of intended loss is determined by what loss the government can reasonably show the defendant intended to cause. *See also United States v. Manatau*, 647 F.3d 1048, 1056-57 (10th Cir. 2011) ("'[I]ntended loss' means a loss the defendant purposely sought to inflict. 'Intended loss' does not mean a loss that the defendant merely knew would result from his scheme or a loss he might have possibly and potentially contemplated.").

Here, Brandon did not intent to cause any financial loss. Brandon believed that the Secretary of Treasury had authority to offset those tax liabilities.

**C. Government's burden of proof.**

The Government must meet the higher burden of clear and convincing evidence to prove loss in this case. Although preponderance of evidence is usually used, the higher clear and convincing standard applies when a "sentencing factor has an extremely disproportionate effect on the sentence relative to the offense of conviction." *United States v. Mezas de Jesus*, 217 F.3d 638, 642 (9th Cir. 2000). In *United States v. Hymas*, the Ninth Circuit recently decided that calculation of losses

that increase an offense figure by 8 levels triggered the clear and convincing evidence standard of proof. 2014 WL 1319543.

Exactly on point with *Hymas*, both the relevant conduct and intended loss calculations increase the sentencing guidelines by 8 points, increasing penalties by at least 88 months for uncharged and untried counts. *See id.* Such dangers require a higher burden of proof.

**Objection 3: Page 6, paragraph 10**

Brandon objects to the implication that Brandon knew the money orders were "fictitious." Brandon truly believed the money orders were a valid way to offset a debt based on his understanding of the law.

**Objection 4: Page 8, paragraph 24**

**A. Brandon was not an organizer or leader.**

Brandon objects to a 4 level increase by considering him an organizer or leader. He also requests a 2 level reduction for playing a minimal role in the offense.

Section 3B1.1 of the United States Sentencing Guidelines provides for 2-, 3-, and 4-level increases to the offense level if the defendant held an aggravating role in the offense:

(a) If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels.
(b) If the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive, increase by 3 levels.
(c) If the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in (a) or (b), increase by 2 levels.

To distinguish leaders and organizers from mere managers and supervisors, Application Note 4 provides a non-exhaustive list of factors for the court to

consider, including:

> [t]he exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

*See* USSG §3B1.1, comment. (n.4).

Here, Brandon asserts that he had no decision-making authority in the company. He did not hire, fire, or manage employees. His role in the company was that of a consultant. Brandon's ideas on contract law existed prior to Gordon's business. And Gordon used Brandon to further his purposes. It was Gordon's idea and company. It was Gordon who benefitted the most from his business. Gordon first hired Brandon to create money orders. Brandon printed checks and money orders for other companies and start-ups. For Brandon this was no different than any other job. Later, Gordon hired Brandon full time as a consultant to teach his employees his contract theory and assistance as a business consultant. But at no time was control or financial stake in the business given to Brandon.

Brandon received a modest salary and later rent to relocate to Arizona. And Brandon did not gain much from his employment at Gordon's company. The scope Brandon's involvement was limited to debt relief through his "expertise" of contract law.

Finally, the government bears the burden of proving by a preponderance of the evidence that the defendant should receive an aggravating role adjustment. *See*, e.g., *United States v. Al-Rikabi*, 606 F.3d 11, 14 (1st Cir. 2010); *United States v. Cruz Camacho*, 137 F.3d 1220, 1224 (10th Cir. 1998) ("The burden is on the government to prove, by a preponderance of the evidence, the facts necessary to establish a

defendant's leadership role.").

**B. Brandon played a minimal role.**

USSG §3B1.2, comment note 4 provides that "the defendant's lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others is indicative of a role as minimal participant." Thus, Brandon contends he should receive at least a 2 level reduction because he was "less culpable than most other participants, but [his] role could not be described as minimal." USSG §3B1.2, comment. (n.5).

Although Brandon's involvement was more than Benton Hall's, he had no idea of the scope of Gordon's business. He merely created the money orders based on information provided to him form Gordon Hall. He did not advertise, recruit, or participate in any other way outside of his consulting. *See also United States v. Cantrell*, 433 F.3d 1269, 1283 (9th Cir. 2006) ("While a comparison to the conduct of a hypothetical average participant may be appropriate in determining whether a downward adjustment is warranted at all, the relevant comparison in determining which of the § 3B1.2 adjustments to grant a given defendant is to the conduct of co-participants in the case at hand.")

***

If the Court grants defendant's objections, 4 levels are subtracted in paragraph 24, resulting in an adjusted offense level of 33 and a total offense level of 28 after subtracting 2 levels for minor role. If calculations are limited to $1,503,573.86 in intended loss as they were for Benton Hall, then 8 levels are subtracted from paragraph 21 for a total offense level of 20. Combined with a criminal history category of I, the applicable range would be 33-41 months.

RESPECTFULLY submitted: March 31, 2015

THE HEATH LAW FIRM, PLLC

By /s/Mark Heath

Mark A. Heath
1640 South Stapley Drive, Suite 127
Mesa, Arizona 85204
Attorney for Defendant

## CERTIFICATE OF SERVICE

I hereby certify that on: March 31, 2015, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following if CM/ECF registrants, and mailed a copy of same to any non-registrants:

LISA JENNIS
U.S. Attorney's Office
Two Renaissance Square
40 N. Central Avenue, Suite 1200
Phoenix, AZ 85004-4408
(602) 514-7500
Attorneys for Plaintiff

/s/Mark Heath