JOHN S. LEONARDO
United States Attorney
District of Arizona

LISA E. JENNIS
Assistant U.S. Attorney
Two Renaissance Square
40 N. Central Ave., Suite 1200
Phoenix, Arizona 85004
Telephone: 602-514-7500
Email: lisa.jennis@usdoj.gov

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br>Plaintiff,<br>vs.<br>Brandon Adams,<br>Defendant. | CR-14-00184-2-PHX-NVW<br><br>**UNITED STATES' RESPONSE TO DEFENDANT ADAM'S OBJECTIONS TO THE PSR** |

The United States of America, by and through undersigned counsel, hereby submits this response to defendant's objections to the PSR and requests that they be denied.

## I. BACKGROUND

In 2012 and 2013, Brandon Adams partnered with co-defendant Gordon Leroy Hall and others in a scheme to defraud the IRS. Prior to this venture, both Adams and Hall had a history of advocating ways to eliminate tax debts by conducting seminars and hosting radio shows. Adams also previously produced legitimate money orders for other companies and in 2012 agreed with Hall to produce money orders for people seeking to eliminate their tax debt. PSR ¶ 6. In fact, according to Hall's employees, it was Adams' idea to use money orders to pay off tax debts as Hall was previously and unsuccessfully using bonds to pay off tax liabilities. Adams also created the paperwork that would

accompany the money order sent to the IRS. Adams came to Arizona to train Hall's employees on how to fill out the accompanying documents and a spreadsheet that Adams created. The spreadsheet contained personal information about the taxpayer and the taxpayer's debt to the IRS. The employees would collect this information from the taxpayer, fill out the spreadsheet and email this spreadsheet to Adams so he could print the money order. Adams then mailed the money orders back to Hall in Arizona and Hall would provide the money orders and accompanying paperwork to the taxpayer. In early 2013, Hall paid Adams to move to Arizona, rented a house for Adams and his family and paid him an hourly wage. Adams brought with him to Arizona, a printer with special magnetic ink character recognition (MICR) cartridges along with money order card stock which he used to print over $93 million worth of money orders. PSR ¶ 7. This equipment was found by FBI during a search warrant executed at Adam's home on May 4, 2013. The first money orders printed were for Hall's more than $1.5 tax debt. Hall obtained the exact payoff amount from an IRS revenue officer, those amounts were provided to Adams along with Hall's identifying information. Adams used this information to print money orders which were later mailed to the IRS as full payment of Hall's tax debt. After Hall was arrested in March 2013, Adams took over the business and obtained Hall's client list. Hall proceeded to trial in January 2015 and was convicted on all four counts of the indictment charging him with 18 U.S.C. Sections 514(a)(1) and 514(a)(2), making and using fictitious instruments. At trial, IRS agent Kathleen Neri testified that 149 money orders prepared by defendant Adams, in order to payoff tax liability of Hall's clients and totaling more than $93 million, were either sent to the IRS

or were found at Hall's residence,

## II. STANDARD OF PROOF IS CLEAR AND CONVINCING

"A district court's findings of fact at sentencing must be supported by a preponderance of the evidence, unless the sentencing factor has an 'extremely disproportionate effect on the sentence relative to the offense of conviction,' in which case findings of fact must be supported by clear and convincing evidence."

*United States v. Jenkins*, 633 F.3d 788, 808 (9th Cir. 2011), quoting *United States v. Dare*, 425 F.3d 634, 642 (9th Cir. 2005). *United States v. Restrepo*, 946 F.2d 654, 661 (9th Cir.1991) (en banc) ("[A]s a general rule ..., due process does not require a higher standard of proof than preponderance of the evidence to protect a convicted defendant's liberty interest in the accurate application of the Guidelines."). In *United States v. Jordan*, 256 F.3d 922, 928 (9th Cir. 2001), the Ninth Circuit noted that in determining whether a sentence has a disproportionate impact, it will look at the "totality of the circumstances," including the factors pronounced in *United States v. Valensia*, 532 U.S. 901 (2001) (internal quotation marks omitted). However, the clear and convincing standard has been imposed only in *exceptional circumstances. See e.g., Jordan*, 256 F.3d at 929 (requiring the clear and convincing standard where there was a nine-level enhancement of defendant's offense level, and an increase of defendant's sentence range from 70-87 months to 151-188 months); *United States v. Mezas de Jesus*, 217 F.3d 638, 643 (9th Cir. 2000) (requiring the clear and convincing standard where there was a nine-level enhancement for "an offense for which [the defendant] was never even charged.").

Defendant's base offense level is 7 and his total offense level prior to acceptance is 37. As there is a 30 level enhancement of defendant's base offense level, a clear and convincing standard of proof should apply.

## III. THE INTENDED LOSS EXCEEDED $93 MILLION AND SUCH LOSS WAS REASONABLY FORSEEABLE (Objections to PSR ¶¶ 9, 10, 13, 14 and 21.)

Defendant claims that he had no intent to defraud and that he "truly believed the money orders were valid way to offset a debt" but he pleaded guilty and admitted that he knew that the "money orders were means to defraud the IRS". CR 115, Objections at p. 4, lns 10-11 and CR 90, Adams' Plea Agreement at p.7 lns. 15-16. Therefore, his specific offense conduct should be based on conduct involving all the money orders he created. See U.S.S.G. § 1B1.3.

Relevant conduct is the cornerstone of the federal sentencing guidelines and it defines the breadth of behavior that is considered at sentencing in every federal case. Relevant conduct includes uncharged conduct, acquitted conduct, conduct described in dismissed counts, and conduct of co-conspirators. See *United States v. Williamson*, 439 F.3d 1125, 1138 (9th Cir. 2006); U.S.S.G. § 1B1.3. The sentencing guidelines specifically define relevant conduct as:

> (1) (A) all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and
>
> (B) in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged

> as a conspiracy), all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity,
>
> that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense;
>
> (2) solely with respect to offenses of a character for which §3D1.2(d) would require grouping of multiple counts, all acts and omissions described in subdivisions (1)(A) and (1)(B) above that were part of the same course of conduct or common scheme or plan as the offense of conviction;
>
> (3) all harm that resulted from the acts and omissions specified in subsections (a)(1) and (a)(2) above, and all harm that was the object of such acts and omissions; and
>
> (4) any other information specified in the applicable guideline.

See U.S.S.G. § 1B1.3(a)(1).

Guideline Section 1B1.3, app. n. 9(A) and 9(B) illuminate the meanings of common scheme or plan and same course of conduct: Application Note 9(A) indicates that "[f]or two or more offenses to constitute part of a common scheme or plan, they must be substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose, or similar modus operandi." *See also United States v. Nichols*, 464 F.3d 1117, 1123 (9th Cir. 2006). Even if offenses do not qualify as part of a common scheme or plan, they may qualify as part of the same course of conduct "if they are sufficiently connected or related to each other as to warrant the conclusion that they are part of a single episode, spree, or ongoing series of offenses." U.S.S.G. § 1B1.3, app. n. 9(B). The determining factors in that consideration are "the

degree of similarity of the offenses, the regularity (repetitions) of the offenses, and the time interval between the offenses." *Id.*; *see also Nichols*, 464 F.3d at 1123.

Here, there was one scheme in which defendant printed 149 money orders that were either mailed to the IRS or were going to be mailed to the IRS. He required a spreadsheet to be completed with a taxpayer's social security number, the payoff amount, the tax year, and taxpayer's current address. Each money order was printed in the same fashion and all were returned to Hall to give to his clients. Therefore, it is reasonably foreseeable that all these money orders would be used to pay a person's outstanding tax debt and there is no difference between the money orders created by the defendant for Hall specifically and those created for other people.

Despite the fact that defendant admits in his plea agreement that he intended to defraud the IRS, he now claims he did not intend financial loss for the amounts listed in the money orders rather he believed that these tax liabilities would be offset. But even if the Treasury could "offset" this liability there would still be a loss to the United States as the Federal Reserve would remove money from one account and transfer it to the IRS.

The cases cited by defendant regarding intended loss are not helpful to the defendant. In *United States v. Santos,* the Ninth Circuit found that "the face value of the stolen checks is 'probative' of the defendants' intended loss . . . ." 527 F.3d 1003, 1008 (9th Cir. 2008). In the *Santos* case there were both stolen checks and counterfeit checks and defendant wanted the value of the counterfeit checks alone to be used to calculate loss. However, in Adams' case, there are no other types of money orders or financial instruments that can be used to limit the intended loss, there are just the ones that he

printed and that loss is over $93 million. In *Santos*, the Ninth Circuit also held that "[t]he government is not required to produce direct evidence of the defendant's intent; rather, it may provide circumstantial evidence from which the district court can draw reasonable inferences. *Id*. at 1009. *Cf. In re Slatkin*, 525 F.3d 805, 807 (9th Cir. 2008) (explaining that because "direct proof of fraudulent intent is rarely available[,] . . . courts allow a finding of fraudulent intent based on circumstantial evidence").

## IV. DEFENDANT'S ROLE ENHANCEMENT IS PROPER AND HE IS NOT ELIGIBLE FOR A MITIGATING ROLE (Objections to PSR ¶¶ 6 and 24)

Defendant claims that his role in the overall scheme is mischaracterized and he has no control over Hall's company. While Hall hired his employees and gathered his clients prior to Adams joining him in 2012-2013, that does not diminish Adams' overall role in the scheme to defraud the IRS by printing authentic looking money orders with the intent to pay off many people federal tax debts. The money orders and the accompanying documentation were Adam's idea and he created them. Without, the money orders, the crime of fictitious obligations would not have been committed.

Therefore, Adams cannot be substantially less culpable than the average participant and is not eligible for a mitigating role. Further, a four level role enhancement for Adams is appropriate as it was his idea to use money orders eliminate the client's tax debt and he trained the Gordon's employees how to fill out the spreadsheet and accompanying documentation necessary to create the money orders. Therefore, he "exercised management responsibility over the property, assets or activities

of a criminal organization", and qualifies for an adjustment under U.S.S.G. Section 3B1.1 (Aggravating Role). See U.S.S.G. Section 3B1.1, app. n. 2. In addition, the conspiracy involved more than five people and was otherwise extensive since it not only included Hall's employees (of which there were more than six) but included Hall's clients who used the money orders to eliminate their tax debt. Despite his claims to the contrary, Adams did receive an hourly wage, and Hall not only paid for his move to Arizona but paid for his family to live in a large home in Mesa, AZ.

Adams' leadership role is further evidenced by the fact that he continued to run Hall's business after Hall and his son (co-defendant Benton Hall) were arrested on March 14, 2013.

## V. CONCLUSION

The PSR writer recommends that defendant Adams be sentenced to 155 months in prison and the United States understands the need to balance and effectuate the sentencing factors set forth in 18 U.S.C. § 3553. First, the "nature and circumstances of the offense" are quite serious. Defendant assisted in a scheme that was not only meant to defraud the IRS of almost $100 million but encouraged criminal behavior in dozens of other people who sent these money orders into the IRS.

The next relevant § 3553 factor is "history and characteristics of the defendant." Defendant's criminal history is minimal however, his advocacy of ways to defraud the IRS has been going on for years.

Next, under section 3553(a)(2), the Court must ensure that the sentence it imposes

will "reflect the seriousness of the offense," "promote respect for the law," "provide just punishment for the offense," "afford adequate deterrence to criminal conduct," and "protect the public from further crimes of the defendant." In the United States' view, the most important of these considerations is the need to achieve general deterrence and promote respect for the law—that is, the need to send a message that debt elimination schemes are wrong and even if the government doesn't experience a loss, the consequences can be great.

Finally, section 3553(a)(4)(A)(i) requires sentencing courts to consider "the sentencing range . . . set forth in the guidelines." Here, the low end of the guidelines is 155 months which is an appropriate sentence considering the type of criminal activity, however, while defendant has been advocating ways to eliminate debt for years, he has not previously spent a day in prison and a minimal departure may be warranted.

Respectfully submitted this 7th day of May, 2015.

JOHN S. LEONARDO
United States Attorney
District of Arizona

*/s Lisa E. Jennis*
LISA E. JENNIS
Assistant U.S. Attorney

Certificate of Service

I hereby certify that on this date, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Mark A. Heath and Rochelle M. Collins, US Probation.